IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JAIME ARIAS-MALDONADO, | ) | Case No. 2:08-CV-00216 JMS-BMK |
| | ) | (PC) |
| Plaintiff, | ) | |
| | ) | FINDINGS AND |
| vs. | ) | RECOMMENDATION THAT |
| | ) | DEFENDANTS' MOTION FOR |
| D.K. SISTO, et al. | ) | SUMMARY JUDGMENT BE |
| | ) | GRANTED |
| Defendants. | ) | |
| _____ | ) | |

FINDINGS AND RECOMMENDATION THAT DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT BE GRANTED

Before the Court is Defendants V. Brumsfield, K. Kesterson, and

C. Arthur's (collectively "Defendants") Motion for Summary Judgment.

(Doc. # 73.)  Plaintiff Jaime Arias-Maldonado ("Plaintiff"), a state prisoner

proceeding pro se and *in forma pauperis*, does not oppose the Motion for Summary

Judgment.  Pursuant to Local Rule 230 of the Local Rules of Practice for the

United States District Court, Eastern District of California ("Local Rules"), the

Court elects to decide this matter without a hearing.  For the reasons discussed

below, the Court FINDS and RECOMMENDS that Defendants' Motion for

Summary Judgment be GRANTED.

BACKGROUND

On August 4, 2008, Plaintiff filed a Second Amended Complaint

("SAC") pursuant to 42 U.S.C. § 1983.  (Doc. # 17.)  The SAC sets forth several

causes of action.  One cause of action arises out of Plaintiff's transfer from

California State Prison in Solano, California ("CSP") to Tallahatchie County

Correctional Facility in South Tutwiler, Mississippi ("TCCF").  (See SAC at 2, 5-

6.)  The SAC appears to allege that Defendants recommended Plaintiff for transfer

based on his race.  (See id. at 5-6.)

      The Court conducted a preliminary screening of Plaintiff's SAC

pursuant to 28 U.S.C. § 1915A(a).  (See Doc. # 20.)  On September 23, 2009, the

Court filed a Findings and Recommendation that the SAC be dismissed ("F&R").

(Id.)  As to Plaintiff's claim regarding his transfer, the F&R stated, in pertinent

part:

> Reading [the SAC] as liberally as possible, Plaintiff appears to
> contend that [his] transfer [from CSP to TCCF] was made on
> the basis of his race, and as such, violative of his right to equal
> protection under the laws.  Plaintiff requests that he "be
> returned at once to [the California Department of Corrections
> and Rehabilitation ("CDCR")] at San Luis Obispo Prison . . . ."
>
>     Since Plaintiff filed his [SAC], Plaintiff has been
> transferred to [California Men's Colony ("CMC")], which is the
> CDCR institution in San Luis Obispo, California.  Thus,
> Plaintiff's claim regarding his transfer out of state is moot.

(F&R at 6 (internal citations omitted).)  The F&R recommended that this claim be

dismissed in its entirety.  (See id. at 8-9.)

Plaintiff objected to the F&R.  (Doc. # 21.)  On November 4, 2009,

District Judge J. Michael Seabright issued an Order Adopting in Part and Rejecting

in Part the F&R ("Order").  (Doc. # 26.)  The Order stated, in pertinent part:

> Regarding the SAC's claim that [Defendants] transferred
> Plaintiff to TCCF due to his race, the [F&R] recommends that
> the court dismiss this claim on the basis that it is moot because
> Plaintiff has since been transferred to [CMC] in San Luis
> Obispo, California.  The court agrees with the [F&R's]
> recommendation that this claim is moot to the extent the SAC
> seeks injunctive relief that Plaintiff be placed "at the San Luis
> Obispo Prison."  The SAC also requests, however, that Plaintiff
> be granted "damages treble pursuant to California existing
> law."  Because the SAC seeks compensatory damages, the court
> rejects the [F&R's] recommendation to dismiss this claim in its
> entirety and finds that Plaintiff has stated a claim against
> [Defendants] for his alleged involuntary transfer based on race.

(Order at 4-5 (internal citations omitted).)  The Order thus directed service as to

Defendants.  (See id. ¶ 2.)  The Order, however, agreed with the F&R's

recommendation that Plaintiff's other claims be dismissed without leave to amend.

(Id. at 5-7.)  As such, the only remaining claim in this action is Plaintiff's claim

against Defendants for his alleged transfer based on race.

On May 2, 2011, Defendants moved for summary judgment with

respect to this claim pursuant to Rule 56 of the Federal Rules of Civil Procedure.

(Doc. # 73.)  Defendants support their Motion for Summary Judgment with the

following.

On October 31, 2006, the CDCR implemented Phase II of the

California Out-of-State Correctional Facility ("COCF") Program.  (Mem. in Supp.

of Mot. at 3; Mot. Ex. A at 2.)  Because an insufficient number of inmates

volunteered for out-of-state placement, a memorandum was issued on

February 2, 2007 ("memorandum"), announcing the implementation of Phase III of

the COCF Program.  (Mem. in Supp. of Mot. at 3; Mot. Ex. A at 2.)  Phase III

involved the mandatory transfer of inmates to out-of-state correctional facilities.

(See Mem. in Supp. of Mot. at 3; Mot. Ex. A at 2.)

The memorandum states, in pertinent part:

> In accordance with the . . . Governor's State of
> Emergency Proclamation, the CDCR Secretary is authorized to
> prioritize the mandatory transfer of inmates who meet the
> following criteria:
>
> 1.     Inmates who:  (a) have been previously deported
> by the federal government and are criminal aliens subject
> to deportation; or (b) have committed an aggravated
> felony as defined by federal statute and are subject to
> deportation.
> 2.     Inmates who are paroling outside of California.
> 3.     Inmates who have limited or no family or
> supportive ties in California based on visitation records
> and/or other information deemed relevant and
> appropriate by the CDCR Secretary.
> 4.     Inmates who have family or supportive ties in a
> transfer state.
> 5.     Other inmates as deemed appropriate by the CDCR
> Secretary.

(Mot. Ex. A at 2.)

The memorandum further states:

> The potential pool of eligible inmates who meet the criteria as set by the Governor's [State of] Emergency Proclamation shall be prioritized as follows:
>
> > 1.    Inmates who have active Immigration and Customs Enforcement (ICE) holds.
> >        . . . .
> > 2.    Inmates who have a potential ICE hold and have a conviction for an aggravated felony.
> >        . . . .
> > 3.    Inmates who have a potential ICE hold and do not have a conviction for an aggravated felony.
> >        . . . .
> > 4.    Inmates who were born in the United States or inmates who are naturalized citizens.
> >        . . . .

(Id. at 2-3.)

The memorandum states that Wardens will be provided an Activation Schedule and list of inmates, using the criteria established by the Governor's State of Emergency Proclamation, who are potentially eligible for transfer under the COCF Program.  (Mot. Ex. A at 4.)  The Wardens are to provide the Activation Schedule and list to the Correctional Counselors whose caseloads include the potentially eligible inmates.  (Id.; Mem. in Supp. of Mot. at 4.)  The Correctional Counselors are to screen the inmates' Central Files to determine their eligibility.  (Mot. Ex. A at 4.)  The Correctional Counselors are also to complete a

"Medical/Dental/Psychiatric Referral" form for each potentially eligible inmate, requesting a medical/dental/psychiatric evaluation.  (Id. at 5.)  The Correctional Counselors are then to interview the potentially eligible inmates and provide each with a "Notice of Classification Hearing" form, informing the inmate that he will appear before the Institution Classification Committee ("Classification Committee") upon being medically and psychiatrically cleared.  (Id.)

The cases of inmates who are medically and psychiatrically cleared are to be prepared for review by the Classification Committee.  (Mot. Ex. A at 6.) The Classification Committee is to review the inmates' cases and recommend out-of-state transfer for those who are eligible.  (Id.)  The Classification Committee must record its actions on a "Chrono--Classification" form, and give the form to the Classification and Parole Representative ("C&PR").  (Id.)  The C&PR is to ensure that the inmates who are recommended for transfer are updated in the Transfer Wait List.  (Id.)  The recommended inmates' cases must then be presented to the Classification Staff Representative ("CSR").  (See id.)  The CSR is to review the recommended inmates' Central Files, and among other things, ensure that the recommended inmates are eligible for out-of-state transfer.  (See id.)

In this case, Defendants were members of the Classification Committee.  (Mem. in Supp. of Mot. at 6; Brumsfield Decl. ¶ 22; Kesterson Decl.

6

¶ 22; Arthur Decl. ¶ 22; Mot. Ex. B.)  Defendants allege that because Plaintiff had an active ICE hold, his case was prepared for their review.  (Mem. in Supp. of Mot. at 6; Brumsfield Decl. ¶ 20; Arthur Decl. ¶ 20.)

Plaintiff appeared before Defendants on November 2, 2007.  (Mem. in Supp. of Mot. at 6; Brumsfield Decl. ¶ 21; Kesterson Decl. ¶ 21; Arthur Decl. ¶ 21; Mot. Ex. B.)  Defendants recorded their actions on Plaintiff's "Chrono-- Classification" form ("Form").  (Mot. Ex. B.)  The Form states that Defendants recommended Plaintiff for placement in the COCF Program based on his case factors.  (See id.)  Plaintiff's case factors state, among other things:  "Arrest history consists of:  Immigration Violation," and "Holds/Warrants/Detainers:  USINS." (Id.)  Plaintiff's case factors also state that Plaintiff has no medical restrictions and is not in the Mental Health Services Delivery System.  (Id.)  Defendants thus indicated, "[Plaintiff] is noted as meeting the current criteria for involuntary placement in the COCF [P]rogram."  (Id.)  Defendants therefore referred Plaintiff to the CSR for endorsement of transfer.  (Id.)  On November 15, 2007, the CSR endorsed Defendants' recommendation that Plaintiff be transferred pursuant to the COCF Program.  (See Mem. in Supp. of Mot. at 7; Mot. Ex. C.)

After Defendants filed their Motion for Summary Judgment, the Court issued a briefing schedule.  (Doc. # 74.)  Pursuant to the briefing schedule, any

opposition to the Motion for Summary Judgment was due May 25, 2011, and any

reply was due June 3, 2011.  (Id.)  Plaintiff did not file an opposition to the Motion

for Summary Judgment.

STANDARD OF REVIEW

Pursuant to Rule 56, "[t]he court shall grant summary judgment if the

movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

Rule 56 mandates summary judgment "against a party who fails to make a showing

sufficient to establish the existence of an element essential to that party's case, and

on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett,

477 U.S. 317, 322 (1986); see also Broussard v. Univ. of Cal., at Berkeley,

192 F.3d 1252, 1258 (9th Cir. 1999) (citation omitted).  One of the principal

purposes of summary judgment is to dispose of factually unsupported claims and

defenses.  Id. at 323-24.

"A party seeking summary judgment bears the initial burden of

informing the court of the basis for its motion and of identifying those portions of

the pleadings and discovery responses that demonstrate the absence of a genuine

issue of material fact."  Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984

(9th Cir. 2007); see also Jespersen v. Harrah's Operating Co., Inc., 392 F.3d 1076,

8

1079 (9th Cir. 2004).  "An issue is 'genuine' only if there is a sufficient evidentiary

basis on which a reasonable fact finder could find for the nonmoving party, and a

dispute is 'material' only if it could affect the outcome of the suit under the

governing law."  In re Barboza, 545 F.3d 702, 707 (9th Cir. 2008) (citing Anderson

v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  Where the movant "will have

the burden of proof on an issue at trial, the movant must affirmatively demonstrate

that no reasonable trier of fact could find other than for the moving party."

Soremekun, 509 F.3d at 984.  "On an issue as to which the nonmoving party will

have the burden of proof, however, the movant can prevail merely by pointing out

that there is an absence of evidence to support the nonmoving party's case."  Id.

        If the movant meets its burden, "its opponent must do more than

simply show that there is some metaphysical doubt as to the material facts."

Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

Specifically, "the nonmoving party must come forward with ***specific facts showing***

***that there is a genuine issue for trial***."  Id. at 587 (emphasis added, citation and

quotation marks omitted).  "[A] party opposing a properly supported motion for

summary judgment may not rest upon the mere allegations or denials of his

pleading . . . ."  Anderson, 477 U.S. at 248 (citation and quotation marks omitted).

Further, "[conclusory allegations unsupported by factual data cannot defeat

summary judgment." <u>Rivera v. Nat'l R.R. Passenger Corp.</u>, 331 F.3d 1074, 1078

(9th Cir. 2003).

<u>DISCUSSION</u>

As mentioned above, Plaintiff's SAC appears to allege that he was

denied equal protection of the laws because Defendants recommended him for

transfer based on his race.  (<u>See</u> SAC at 5-6.)  In their Motion for Summary

Judgment, Defendants argue:  (1) the undisputed evidence shows that they

recommended Plaintiff for transfer based on his eligibility under the Governor's

State of Emergency Proclamation and subsequent memorandum, and not his race,

and (2) they are entitled to qualified immunity.  (Mem. in Supp. of Mot. at 10-14.)

The Court addresses Defendants' arguments in turn.

"The Equal Protection Clause of the Fourteenth Amendment

commands that no State shall deny to any person within its jurisdiction the equal

protection of the laws, which is essentially a direction that all persons similarly

situated should be treated alike." <u>Lee v. City of Los Angeles</u>, 250 F.3d 668, 686

(9th Cir. 2001) (quoting <u>City of Cleburne v. Cleburne Living Ctr.</u>, 473 U.S. 432,

439 (1985)) (quotation marks omitted).  The Ninth Circuit has made it "clear that

the protections of the Fourteenth Amendment extend to state prisons." <u>Walker v.</u>

<u>Gomez</u>, 370 F.3d 969, 974 (9th Cir. 2004).  Thus, "[p]risoners are protected under

10

the Equal Protection Clause . . . from invidious discrimination based on race."
Serrano v. Francis, 345 F.3d 1071, 1081-82 (9th Cir. 2003) (quoting Wolff v.
McDonnell, 418 U.S. 539, 556 (1974)) (ellipses in original, quotation marks
omitted).  Under the Equal Protection Clause, a claim of racial discrimination
requires a showing that the defendant acted with an intent or purpose to
discriminate.  See Washington v. Davis, 426 U.S. 229, 239-240 (1976); see also
Serrano, 345 F.3d at 1082 (citing Barren v. Harrington, 152 F.3d 1193, 1194
(9th Cir. 1998)).  "Intentional discrimination means that a defendant acted at least
in part *because of* a plaintiff's protected status."  Serrano, 345 F.3d at 1082
(quoting Maynard v. City of San Jose, 37 F.3d 1396, 1404 (9th Cir. 1994))
(emphasis in original, quotation marks omitted).  "To avoid summary judgment,
[the plaintiff] must produce evidence sufficient to permit a reasonable trier of fact
to find by a preponderance of the evidence that the decision was racially
motivated."  Id. (citation and quotation marks omitted).

       Here, Plaintiff has not produced any evidence that Defendants'
decision to recommend him for transfer was racially motivated.  Instead, the
undisputed evidence shows that Defendants' decision to recommend Plaintiff for
transfer was based on his eligibility under the Governor's State of Emergency
Proclamation and subsequent memorandum.

The memorandum states, in pertinent part:

> In accordance with the . . . Governor's State of Emergency Proclamation, the CDCR Secretary is authorized to prioritize the mandatory transfer of inmates who meet the following criteria:
>
>> 1.      Inmates who:  (1) have been previously deported by the federal government and are criminal aliens subject to deportation; or (b) have committed an aggravated felony as defined by federal statute and are subject to deportation.
>> 2.      Inmates who are paroling outside of California.
>> 3.      Inmates who have limited or no family or supportive ties in California based on visitation records and/or other information deemed relevant and appropriate by the CDCR Secretary.
>> 4.      Inmates who have family or supportive ties in a transfer state.
>> 5.      Other inmates as deemed appropriate by the CDCR Secretary.

(Mot. Ex. A at 2.)  The memorandum further states, "The potential pool of eligible inmates who meet the criteria as set by the Governor's [State of] Emergency Proclamation shall be prioritized as follows:  1.  Inmates who have active [ICE] holds."  (Id.)

As members of the Classification Committee, Defendants were responsible for reviewing the cases of potentially eligible inmates and recommending those who were eligible for transfer.  (See Mot. Ex. A at 6; see also Brumsfield Decl. ¶¶ 16, 22; Kesterson Decl. ¶¶ 16, 22; Arthur Decl. ¶¶ 16, 22.)  In

this case, Defendants reviewed Plaintiff's case factors and confirmed that he met

the criteria for placement in the COCF Program.  (Mot. Ex. B; <u>see also</u> Brumsfield

Decl. ¶ 25; Kesterson Decl. ¶ 25; Arthur Decl. ¶ 25.)  Defendants noted that

Plaintiff's arrest history included, among other things, an immigration violation.

(Brumsfield Decl. ¶ 23; Kesterson Decl. ¶ 23; Arthur Decl. ¶ 23; Mot. Ex. B.)

Defendants also noted that Plaintiff's Form stated, "Holds/Warrants/Detainers:

USINS."  (Brumsfield Decl. ¶ 23; Kesterson Decl. ¶ 23; Arthur Decl. ¶ 23;

Mot. Ex. B.)  Defendants maintain that this confirmed that Plaintiff had an active

ICE hold and was therefore eligible under the first priority group.  (Brumsfield

Decl. ¶ 23; Kesterson Decl. ¶ 23; Arthur Decl. ¶ 23; Mot. Ex. B.)  Lastly,

Defendants noted that Plaintiff did not have any medical restrictions, and was not a

participant in the Mental Health Services Delivery System.  (Brumsfield Decl.

¶ 24; Kesterson Decl. ¶ 24; Arthur Decl. ¶ 24; Mot. Ex. B.)  Defendants thus

recommended that Plaintiff be referred to the CSR for endorsement of transfer.

(Brumsfield Decl. ¶ 25; Kesterson Decl. ¶ 25; Arthur Decl. ¶ 25; Mot. Ex. B.)

        Defendants maintain that they were not involved in the initial

determination as to which inmates were potentially eligible for placement in the

COCF Program.  (Brumsfield Decl. ¶ 33; Kesterson Decl. ¶ 33; Arthur Decl. ¶ 33.)

Defendants further maintain that after the Classification Committee hearing on

November 2, 2007, they had no control over whether Plaintiff would be endorsed for transfer.  (Brumsfield Decl. ¶ 35; Kesterson Decl. ¶ 35; Arthur Decl. ¶ 35.)

Based on the foregoing, there is no genuine dispute of material fact as to Defendants' motives.  Plaintiff has not come forward with any "specific facts" showing that Defendants' decision to recommend him for transfer was based, at least in part, on his race.  The conclusory allegations contained in his SAC are insufficient.  Rivera, 331 F.3d at 1078 ("Conclusory allegations unsupported by factual data cannot defeat summary judgment."); Magana v. N. Mariana Islands, 107 F.3d 1436, 1448 (9th Cir. 1997) ("[M]ere conclusory statements of discriminatory intent will be . . . insufficient to avert summary judgment."); see also Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988) ("Sweeping conclusory allegations will not suffice to prevent summary judgment.").

Because the Court FINDS that there is no evidence that Defendants acted with an intent or purpose to discriminate against Plaintiff based on his race, the Court RECOMMENDS that Defendants' Motion for Summary Judgment be GRANTED.  The Court therefore does not reach the merits of Defendants' qualified immunity argument.

<u>CONCLUSION</u>

For the reasons set forth above, the Court FINDS and

14

RECOMMENDS that Defendants' Motion for Summary Judgment be GRANTED.

IT IS SO FOUND AND RECOMMENDED.

DATED:  Honolulu, Hawaii, June 17, 2011.



　　　　　　　　　　 /S/ Barry M. Kurren
Barry M. Kurren
United States Magistrate Judge

Jaime Arias-Maldonado v. D.K. Sisto, et al., Case No. 2:08-CV-00216 JMS-BMK (PC);
FINDINGS AND RECOMMENDATION THAT DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT BE GRANTED.